v. Sharon L. Green on behalf of the Appalachians, Patrick Daly, on behalf of the Appalachians, Mr. Mark B. Levine. Good morning, Your Honors. May it please the Court. My name is Patrick Daly. I'm from the State's Attorney's Appellate Prosecutor's Office in Mount Vernon. This case is an appeal by the State of a ruling by the Circuit Court of Winnebago County suppressing a Class X amount of cocaine resulting from what the Court determined to be an unlawful arrest of a defendant. It's really a fruit-of-the-poisonous-tree case. The Court determined that the drugs are recovered is basically the fruit of the poisonous tree, the poisonous tree being the arrest itself. The drugs are not recovered immediately, but at some time thereafter, the arrest. If the arrest was not improper, then we don't get to the fruit of the poisonous tree because the search would be authorized pursuant to a custodial arrest. That's absolutely correct, Your Honor. Maybe you can flesh out some facts here that I'd like you to address. Certainly. There's a series of interactions between the police and the defendant. I think it's useful and helpful to divide them into segments. Correct. So the police officer rolls up pursuant to a call. Correct. And obviously the same questions would be posed to opposing counsel of some type of an offense in progress. Correct. This isn't the Wardlow situation where the police roll up and it's a high-crime area. They don't have any pre-existing reports and the defendant flees. Correct. So there's observations, there's a report of a crime in progress, the officer arrives, sees ostensible corroborating circumstances, and by a trunk, Mr. Green takes off. Yes. Further in the mix, the trial judge found, this was a little bit confusing, I don't think specified, that there was a valid, quote-unquote, when I read the transcripts, of a Terry Stout. Correct. But I don't think he specified when he found there was a valid base for the Terry Stout. So when the officer rolls up, sees all of this, is there a basis for Terry Stout right then and there when he arrives at the scene, based on his observations and pre-existing information? If you say no, you probably have a problem. I'll just give you an opinion. I would say, well, I think that, okay, I'll say yes. I mean, give me a honest assessment as an officer of the court based on the evidence. But I have to say, let me, I'll answer your question, but let me try to unscrew the facts a little bit here, a little bit more than how you've described them. When the officer arrived, I believe this is Officer Washington's testimony, when he arrived at the scene after getting his call, he saw these individuals around the car, so there's a corroboration between the call and what he saw. When he got out of the car to go investigate, which is certainly his prerogative and right to do, whether there's a Terry basis or not to do so, that is when he saw the defendant, according to Officer Washington, make like he's going to run away. Washington agrees with that, right? Correct. Okay, so it's not, I mean, I don't mean Washington, the defendant agrees he saw Washington and he ran. There's no conflict in your testimony on that point. He saw, well, only to the extent that he didn't say that, that he saw Washington and turned and ran, he testified to the defendant that he was walking away from the scene and that when he turned around, he saw Washington running at him. And then he ran. And then he ran. He knew he was a uniformed police officer. A distinction without a difference. Right, the reason he ran is another issue. The only reason I point this out to you, Ron, is just to point out the fact that I think that the Wardlow discussion came as a result of the officer's testimony and the circuit court's determination that when Officer Washington was approaching the scene, he saw the defendant kind of getting jigging up ready to run. And then Washington made some statement to the effect of don't do it or don't do it. And then, boom, Washington, excuse me, the defendant then ran. That's what Wardlow came to. You know, a Terry stop authorizes a limited detention. Correct. So, again, when Washington rolls up, was there a right, based on all those observations of preexisting information of a crime in progress, was there a right to effectuate a Terry stop at that point? Yes, there was. Correct. And on what basis do you come to that conclusion? Well, you know, Terry is nothing. Terry is a reasonable suspicion standard. If you look at Terry, Terry itself, Terry versus Ohio, the basis for the Supreme Court allowed for the stop of Terry was that he was out in front of the store, I think, kind of casing it, kind of walking back and forth. But he wasn't really doing anything more than that. So it was a suspicious activity, which then would, the Supreme Court ruled, allow the officer to at least do a preliminary investigation, a limited detention to determine what's going on. Now, this is… You arguably here have more than you had in Terry. You have more than that. Not arguably. You do have more here than you do in Terry. I would submit to that. I've heeded the Wardlow discussion in the brief only because that's how the circuit court analyzed it in the sense of what the defendant did when the officer approached the scene. This is obviously beyond Wardlow. Exactly. They were in a high-crime area, but they had no preexisting reports or observations of necessarily a crime in progress. Correct. I would agree with the characterization this would be beyond Wardlow. All right. So here's the next question. If you have a ballotary stop before Mr. Green takes off running, and assuming there's a connect, that's going to be connected up to the Washington leaving because he sees the police officer, there's a connection there. The defendant. Yes, the defendant. He takes off. Obviously, there's law that says the officer has a right to use force to effectuate a Terry stop. Otherwise, what would be the purpose of having the right to detain if you couldn't do anything to effectuate the detention? Correct. Green runs. Giving rise to probable cause, you're arguing to arrest him for what offense or offenses? Okay. The probable cause actually stems not from the flight, but from the disobeying of the order of the officer to stop. So, in other words. Well, let me – I have to interject this. I don't want to confuse it. But I think one of the problems we had here in the record was that there was some – did the court ever specifically find whether or not Officer Washington ordered him to stop? I thought there was a little money in the findings. Correct. That's correct. And I point that out in the brief that the court had not made. There was one of the most specific factual disputes in the record was that the defendant said he didn't hear – he heard Washington saying something. He didn't acknowledge or agree that it was in order to stop. Now, Washington testified they did tell him to stop. And so what did the court find on that issue? It was a factual finding. Okay. The court's finding is really two parts. Number one, it found that although Terry allowed for the officer to detain the defendant, the use of the taser device, and it's one of these spring-loaded tasers with the wires attached and the bars, elevated the nature of the stop from a Terry to a full custodial arrest without probable cause. Does that do that? Or is the tasing sort of a red herring in this? I think that Terry – I think that the taser is a bit of a red herring because, as Your Honor just noted, an officer has available the means by which to effectually let Terry stop. And that always is going to be somewhat factually specific. What we have here is you have, you know, the officer's there basically to record what he sees. According to Washington's testimony, he sees the defendant running away. He's reaching and got something in his waistband, and he's kind of running away. Officer Washington testified that he didn't know what he had, but based upon his experience, it was consistent with someone who may have a weapon in their possession. So when you look at that circumstances, plus the fact that the defendant is 6 feet tall, 207 pounds, so he's not a slight individual, you know, the use of the taser device is really the safest and most effective way to subdue someone that large who may be armed where it doesn't require the officer to actually tackle him or grab him. What you're saying is if the officer has a right to detain the suspect pursuant to Terry, he has the right to use reasonable force to effectuate the detention. Otherwise, there'd be no purpose in having a right to detain if he couldn't take the steps to effectuate. Correct. It somewhat begs the question what the officer is supposed to do in that situation where he's testified reasonably that he believed that the defendant may be armed, and he's a large individual, and he's running away. We give deference to, at least initially, to the findings of the trial judge. But you're glossing over something. If the trial judge does not rule that he believes Washington ordered the defendant to stop, is it not arguably an implicit rejection of that finding? So how do we conclude that he ordered him to stop if the trial judge didn't? I think that's sort of the nature of the defendant's argument, and although I don't see the point, my response to that would be is that the circuit court's ruling here, where it found that there was an unlawful arrest, was really factually dependent on one particular circumstance of it. Okay? The court did find that the defendant was fleeing. Okay? Obviously, it wouldn't have gotten the ward over if it hadn't at least come to this conclusion that the defendant was running away from the police. Okay? So in that respect, then, I think that my position would be that having made the findings with regards to the cannabis that he recovered and didn't believe the officer's testimony that when he was frisking him after he was on the ground that he could smell cannabis. Well, again, that could become irrelevant if we were to find there was enough probable cause for custodial arrest. Correct. Correct. All right, so if he doesn't find, then we're back to the argument, does he have to find that he ordered him to stop? Even if Washington didn't order him to stop, if by the defendant's own testimony he saw him and was running from him, is there a probable cause to arrest him? I think it went, yes. Well, just by seeing him running away without there being a finding that he was ordered to stop, is that the question? Well, yeah, let's assume that that is the case. You've got a voluntary stop from the inception. The defendant takes off running. If the ground's dependent upon whether or not the defendant hears him when the defendant sees him in his running? Let me make sure you understand this question. And correct me if I'm wrong. I think the defendant's testimony is he turns around and sees the officer running after him. Correct. Okay, so he sees the running officer coming toward him and he runs away. Correct. I can't see what difference it makes if the officer yells halt or not. The purpose of yelling halt is to let the guy know you're chasing him. The guy's own testimony is the cop's chasing me, that's why I'm running. And that's a good point, John, and I agree with that. Thank you. So, knowing that, that gives rise to a probable cause to arrest them for what offense? Well, it would be resisting a police officer or obstructing a police officer. Which is it and why? Well, as a trial prosecutor, I grapple with this sort of distinction. But generally resisting a police officer involves an act of physical resistance. Okay. Obstructing means that while there's an act involved, it is something that's done to basically impede an officer's execution of a lawful duty. Right. In this instance, I believe obstructing would be the closer charge in that instance. The resisting came later on in this case. But in that case, it would be obstructing a police officer, although I have to say this, Your Honor, when you look at the cases that I've cited that talk about resisting a police officer based upon refusal of an order to stop, I believe it characterized them as resisting. So, you know, the distinction is not always clarified in decisions. It may not matter. It's going to be one or the other. The probable cause stems from either resisting or obstructing. And that's the fact that you had preexisting grounds for a terry stop, and now there's probable cause to arrest them for the theft. You're not saying theft. The fact that you fled from the trial. Correct. Okay. So. So I'm not saying that I'm fighting. You really have to hint. You would have to agree with your argument that there was valid basis for a terry stop when the officer got there based on his observations and the preexisting information. Yes and no. I think that, again, I think that even if you make the conclusion that there was no terry basis to stop or detain the defendant when the police officer first arrived. Yes. Okay. Anyway you look at it, the officer, the defendant ran away from the police officer. The circuit court made that finding. Once the defendant does that, then you've got grounds. For what? For a terry stop. Right. So if you've got grounds for a terry stop, how do you get into his pocket? Well, what happened, according to Officer Washington's testimony, is that he had ordered him to stop. He didn't stop. He eventually tasered him. He was on the ground. He had one hand, I believe, under, kind of underneath his waist. Another one was outside. He was ordering him to move his hands away from his waist area. He was not doing it. He was actually moving one of his other hands towards the waist area. And remember, again, Officer Washington testified that he thought that this guy may have a weapon in his possession. I believe it was twice, according to Officer Washington's testimony, that he had to taser him in order to get him to comply with that command. That, again, would constitute, in my opinion, an act of obstruction of the police officer by not doing what the officer was telling him to do. You're blending ward law with the probable cause. Okay? I suggest to you if we found there was no valid right initially for a tarry stop, his flight becomes the ward law tarry stop. Correct. And when you have a tarry stop, you don't have the right to search into somebody's pockets. You have the right to do a pat-down. And maybe by a feel of a weapon or plain feel of a hard object of drugs, you might get into his pockets. The problem here is the trial court explicitly and specifically rejected the officer's testimony who could see or smell the cannabis. Correct. So why is he in his pocket? Okay. The search of the defendant, okay, for the cannabis occurred after he ran away and refused the order to stop after the police told him to stop or just ran away and obviously was disobeying the officer's implicit command to stop. But Officer Washington testified the order to stop. He twice then refused the officer's command to put his hands in an area where the officer could see that there won't be any danger to himself or anybody else, based upon what the officer thought might be the situation. So how does he get the right legally to go into his pocket and pull out a plastic bag? Because at that point you have thrice over probable cause to arrest the defendant. Once you have probable cause to arrest the defendant, then a search is legitimate. Well, I figured you would get to it at some point because I suggest you have to, under the trial court's factual findings, we have to conclude there was probable cause at that point to perform a custodial arrest which would allow a full search of the arrestee. Correct. Not a terry stop. It's under me for you to say he has the right to go into his pocket and a terry stop. Okay. It is one part of my argument. I want to go to my other part of my argument. Very quickly. I know we've been badgering you, but your bell went off soon. I'm sorry. I didn't hear you. I'll stop now. Everything's in my brief. If something comes up in rebuttal, I'll discuss it. Thank you, Your Honor. All right. Thank you for responding to all of the questions and your limited argument. Counsel. Good morning, guys. I'm Mark Levine from the Office of the State Appellate Defender, representing Sharon Green. First, I'd like to answer questions that were raised before. There was no grounds for a terry stop when the officers first arrived on the scene. There was a call of a burglary in progress. Mr. Green testified that some acquaintances of his were moving out of the place. They were hauling things out of an apartment. There was a truck there. They had a dresser and a mirror in the back of it. But he himself was just walking on the street. He testified that he was approaching a woman he knew when the officers arrived. So it wasn't even clear from the evidence we have that he was even involved in this moving, although perhaps he was. And furthermore, it wasn't even clear that the moving was any kind of an offense. There were some people moving. So there was no grounds for a terry stop when the officers first arrived. The judge found that a terry stop grounds arose under Wardlow when Green ran. Now, Your Honor's question about isn't the running with an officer chasing him, isn't that resisting? Well, Wardlow found that that was, under similar facts, Wardlow found that that was grounds for a terry stop. Wardlow did not say that that was grounds for probable cause for arrest. Let's back up to your initial characterization. And obviously you're going to argue your defense as an advocate that helps your side of the case. As the court found them to be. Well, as the court found, right, but obviously they're subject to review by us. Of course. Correct me if this is not right, but I think under the case law, in terms of a motion to suppress, we look at the situation as the officer would when he rolls up to the scene. Not what's in the mind of the suspect. And it could have been looking into a trunk. It could have been some people moving. But the officer is responding to a call of a crime in progress, correct? Albeit it could be wrong, but that's the report he's operating on. Correct. He's a police officer who then rolls up and sees Mr. Green by the trunk. Albeit there could be an innocent, innocuous explanation for him being near the car. Okay? And then, so a reasonable, responsible police officer wouldn't have the right to question people at the scene based on that you're saying. In other words, Terry says you have the right to approach where you have detained a reasonable, articulable suspicion of criminal activity. Why wouldn't there be a reasonable, articulable suspicion of criminal behavior based on the call of a crime in progress and based upon what the officer observed when he arrived there? Setting aside what the court finds, why wouldn't there be a reasonable, articulable suspicion? Can you tell us that? Well, this is a city street. In the afternoon, it wasn't 2 o'clock in the morning. I think it said it was 6 o'clock in the evening. People walk on the sidewalk. Do we find under Terry that an officer has reasonable suspicion to question everybody in the area? He's walking on the sidewalk? No. So you're saying the facts are, the record is, it's clear that Mr. Green is unconnected to anything to do with the trunk or the people by the trunk. Is that your interpretation? Without the record in front of me, I hesitate to answer that. I don't know that the record shows, contrary to what the judge found, that what the judge found was contrary to the manifest way of the evidence, which is the standard of review here. But without being able to look at the record, I don't want to misrepresent it to you. See, the concern that we have is I don't think the court, and I ask that both counsel, ever specify at what point it believed there was a valetory stop. And as you know, the court, I read the transcripts, the court clearly says, quote, unquote, I find there was grounds for a valetory stop, but he doesn't specify when. It could have been after the, you know, when he ran, or it could have been when the officer rolled up. So it's a little bit vague at what point he makes that finding. On page 361 of the record, the judge said that the running, that it was the running that justified a carry stop under ward law. That was the judge's finding, 361. And there have been previous testimony, I think, that it was a high crime area, which is what brought it into ward law. If that were so, then when the, when he uses his taser to detain the defendant, he's knocked to the ground, presumably, and then does not place his hands where the officer can see them, does that failure to respond to the officer's command elevate this then from a carry stop to a full custodial arrest? I think it could if the judge had believed Washington's testimony, but the judge didn't. The judge said, I've got the page cited over here. He didn't believe him about detecting an odor of cannabis? Yeah, he didn't believe him about various things. On page, that's on 387 of the record, the judge said, I find issues of credibility with Officer Washington. I read that with interest, so what does that mean? Issues of credibility with respect to what portion of his testimony are you suggesting we should find that the trial judge didn't believe him at all? Probably the latter. Probably the latter, at least where his testimony conflicts with Greene's testimony, because as I cited in the brief, that there's an implicit factual finding when the judge's ruling is consistent with one party's testimony and inconsistent with the other party's testimony, and that's exactly what we have here. The judge specifically said that Washington was testifying falsely about smelling and seeing the cannabis before he pulled it out of the pocket. Later on, very late in the proceeding, the officer, Washington, testified that he found cocaine in his squad car after Washington had sat in there for a few minutes. He testified that he had checked the car before and there was no contraband in there and he found it afterwards, so naturally it came from Greene. Except the judge said, I don't know whether he, meaning the defendant, put it there or not. So even though Washington's testimony on this point also was not contradicted by anything, the judge didn't believe it. Well, I would say, how would you answer this, though? There appears to be, as my learned colleague asked earlier, one point that's critical where I don't think it's disputed. Did not the defendant testify? He turned around, he saw Officer Washington coming toward him with a gun, a uniformed police officer, and he admits running from him? Is that a dispute? No, that's not a dispute. That brings us back to Wardlow, where that's what happened in Wardlow and they found that that was grounds, the U.S. Supreme Court found that that was grounds for a terrorist act. And it would be, absent the preexisting other information that we need to sort out, because this isn't Wardlow. Because in Wardlow, as I recall, correct me if I'm wrong, there was no call to crime in progress in Wardlow, was there? I don't remember. What were the police, what the police were doing there? I don't think there was. The police came up to the high crime area and they held it headlong, quote-unquote, flight gives rise to a terrorist act. I'm pretty sure there was no preexisting information of any kind in Wardlow. I don't know. I'll have to look at that. I'm not sure. Let me move to an important point, if I could, that the state made in its brief. Before you do that, let me ask a question. The judge seemed to say, well, he didn't seem to, he said when the taser was used that moved it from a Terry stop to a full arrest. That just seems to me to be completely wrong. What's your view of that? I mean, did the force used to elevate the thing from the terrorist? I think you're right. Okay. We can go to your point, then. I mean, plainly, he wasn't free to move. He was unconscious on the ground. That doesn't matter. The question is whether the officer had grounds for a full arrest. Clearly, he had disabled the man. The question is whether he had probable cause to do that. Yeah, but I mean, the use of that kind of force doesn't automatically elevate a Terry stop to an arrest. Well, that's what the judge seemed to think. The judge said when he used the taser, that elevated it to an arrest, and I didn't follow that. Well, as I say, the question is still whether there would have been probable cause for an arrest. But, yes, the man is lying unconscious on the ground. He's not free to leave. He's not free to do anything. He's not free to move his arm. He's unconscious. Well, the judge thought that the use of a taser elevates it to an arrest, and you're saying... I'm saying that doesn't matter because the question is still the same. Did he have probable cause to go in the man's pocket? Yeah, right. If it was an arrest, the question is was there probable cause for an arrest? No, there wasn't. And so, therefore, he didn't have grounds to go in his pocket, and whether tasering turned it into an arrest or not, I don't know. It doesn't matter. Red herring, I think. The state says, quotes the judge as saying that there was a struggle. Here, he says, green, he bumps the officer, there was a struggle at that point, and he falls. That's in the state's brief replying to our brief. But the judge did not find a new offense over here. The question is, why not? There's no dispute on the law. Obviously, if the person commits an offense in front of a police officer, the officer has probable cause to arrest him. The judge himself acknowledged this on 364-65 of the records. There's no dispute about the law here. The dispute is about what happened. So, how do we understand this? He bumps the officer, there was a struggle, and he falls. And yet, there's no new offense. Because green had just been tasered, what, two or three times within the last couple of minutes. Now, tasering, as you know, causes tremendous pain. It causes all your muscles to collapse. You fall in a heap. There's horrible pain from tasering. We all know that. This had just happened. So, green is naturally kind of unsteady on his feet. He was unconscious there for a moment. Now, the judge said green bumps the officer, but he didn't say that green hockey checked the officer, which is what Washington's testimony had been. So, he may have bumped into him. The judge finds that he bumped into him. But for resisting an officer, that has to be knowingly. So, here you've got a woozy man who's wobbling back and forth. He bumps into the officer. Then he says there was a struggle. But the judge pointedly did not say that green was struggling with the officer. He said that there was a struggle. Now, if I'm moving a bulky object, you might say that I'm struggling with this object. But I'm not going to say that the object is struggling with me or that the object is resisting me. Here you've got, I think he said it was a 270-pound man who had just been tasered. And although he was big, the taser was certainly effective. There's no question about that. Who's wobbling around, perhaps, unsteady. And so, the judge, perhaps summarizing the testimony, characterized this as a struggle. But pointedly, he did not say that green was struggling with Washington. So, that's how the judge who was an experienced judge, he was fully aware of the law. He himself had recited the law earlier about a new offense in front of the police officer breaking the chain. But he didn't find that there had been a new offense. The standard review here, as we know, is whether the judge's finding is against the manifest weight of the evidence. Only then can it be reversed. I submit that his finding on this point was not against the manifest weight of the evidence. His holding is an implicit finding of fact, even though he didn't specifically speak on this. I think he did say, though, didn't he, that he felt that the defendant did not intentionally bump into the officer and was not trying to get away from the officer. I think his finding on this issue was a little more specific and clear, I think, than maybe on some of the earlier records. But I would have to agree with you. I think you're correct on that. So, this is not a new offense that's being created over here. Now, Judge White specifically also found that Green did not flee. This is after he'd been stood up again, standing by the car. He specifically found that he did not flee. This is contrary, directly contrary, to Washington's testimony that Green took off running for the open door of the car. Let's assume we agree with you on that issue. With regard to the earlier issue, did the trial judge ever specifically make a finding on whether or not Green was attempting to evade the officer before he was tased? Before he was tased the first time? Yes. I think we have to say that he made an implicit finding on that when he said that it was the running that justified, under Wardlaw, that justified a Terry stop. So, we have an implicit finding on that, yes. A couple of other points here. So, this time when he was supposedly fleeing, Washington, he said, placed the taser directly on the man's neck and discharged it again, dropping him once again to the ground. Now, this is where Washington's story got even harder to believe. He said, this was right after he had just been tasered again. All of a sudden now, he's got, Green has a brick of cocaine in his hand. Now, his hands were, may I continue or should I stop? Yes, go ahead. His hands were handcuffed behind his back. He had now been searched for weapons at least twice that I can remember. And now he's been tased again. How in the world would he get a brick of cocaine into his hand under those circumstances that had never been noticed before? This is, Washington's testimony would strain the credulity of the gullible. And Judge White, who was an experienced judge, he'd been a prosecutor for years, he was simply not buying Washington's testimony. It was not worthy of belief. Does your record say how big this brick was? Well, it said it was brick-like, so I was picturing it like a brick, the size of a brick. If it were a little thing, I imagine they wouldn't have described it as a brick. Well, it'd be my first assumption, I would think house brick, I guess, but I was wondering if there was any further clarification. I don't know if the terminology... I don't believe so. There were two other officers present at this thing, Officers Bertola and Donato. They were not called, they did not testify, they did not corroborate Washington's testimony, so if all of these offenses after this, the fleeing, the bumping, all of this had happened, it could have been corroborated, but it wasn't. Counsel, one final question. You had characterized from the defendant's standpoint, from your perspective, when the officers arrived, I believe you said something about the defendant was just sort of walking down the street in the vicinity, or something along those lines. Did the trial court ever make a finding of fact, beginning when the officer rolled up, as to what was going on? Did the trial court ever address anything about the defendant's behavior and what he was doing when the officers arrived at the scene? Or did he just sort of pick it up after Washington confronted the defendant? I don't recall the judge specifically addressing that. I wouldn't rule it out, but I don't specifically recall it. His ruling, however, was an implicit finding. Because there was conflict in the testimony between Green and Washington, who were the only two witnesses at the hearing, the judge's ruling is consistent with Green's testimony and not consistent with Washington's testimony, so it must be that he believed Green. The reason that the judge found everything after the initial seizure should be suppressed is because he didn't find any new offenses occurring after that, after the initial unlawful seizure. So that's the reason this is a fruit of the unlawful, poisonous fruits case, because nothing broke the chain. The judge did not find any, although Washington testified to a whole string of offenses that occurred after that. The judge didn't believe any. Because the judge's finding is not against the manifest way of the evidence, it should be firm. Okay, thank you. Thank you. Rebuttal for the people. Mr. Daly, please. You know, I want to get to the, what happened after the arrest. Because I think it's important to kind of look at the history of the way the court ruled on this case before we kind of look at his rulings in that regard of what happened during the arrest and saying that he didn't really find anything that happened. When this case initially came up and the court made its decision, the court had basically held that, well, the initial arrest was unlawful and therefore, you know, everything that happened after that would have never happened if the initial arrest had not occurred in the first place, which is about as clear a statement as a but-for rule application of the fruit-of-the-poisonous-tree doctrine, as you're going to see. Now, the state pointed out in the motion to reconsider, well, wait a second now, there's an intervening circumstance here. This officer testified that the defendant had committed, you know, at least one or two criminal acts during the course of the arrest. Now, when the defendant testified, he was not asked any questions about this particular aspect of the incident. He was doing cross-examination by the state. He denied that he had bumped the officer or any of this had happened, okay? So the defendant denied bumping, and that's really all that you have from the defendant's mouth about what happened. Then you have Officer Washington's testimony, okay, that he was reaching behind him trying to pull out the wires for the shoulder barbs, then he had bumped or shoulder checked Washington, and then attacked him. And why can't the trial court, to cut to the chase, believe the defendant on that issue? Why can't you believe him? I don't think the defendant, no, the judge didn't believe him on that issue, Your Honor. I mean, the judge found that the defendant bumped the officer. He found that a struggling suit. These are all consistent with Officer Washington's testimony. The only thing I heard the defendant say in this regard was that he didn't bump him. So you're characterizing the trial judge found basically or implied that the defendant committed new offenses? I'm absolutely saying that. That's not what the trial judge said, did he? Well, the trial judge found as a matter of fact that the defendant had bumped the officer. But he also found it was a matter of fact that it didn't amount to a new offense. But what did he answer? But this is a legal question, not a factual one. I mean, if the judge makes a ruling that a person is rustling on the ground with the officer during an arrest and the judge says, well, the initial arrest was no good, so I'm not going to find anything resisting a peace officer, I don't think a reviewing court can look at those facts and say, well, the judge said that. I know what you're saying. It goes against the manifest way of the evidence, and I understand that argument. Let me go back to the beginning in light of what your opposing counsel alluded to. Did the court make any findings of fact as to what the defendant was allegedly doing when the police officer arrived at the scene? No. The judge went right to the more low determination. And what is your interpretation of the record as to what the defendant was doing when the officer arrived at the scene? I think that the officer saw the defendant along with a group of other people by a car where the trunk was open, fitting the description of what had been called in as what appeared to be maybe a theft of property. He wasn't really walking down the street near the scene? That's not what the officer testified to. The defendant said he was walking away with the officer. Walking away? I think he said he was walking away with a woman. I believe that was the defendant's testimony. What the judge found is that when, I think the judge was sort of according to the Washington's testimony when Washington arrived. If you look at the judge's mind, it sounds like you've read the record already. When the judge made the decision, he sort of repeated what he heard the testimony was, and then without actually saying this or that version of what happened when he arrived, he said we had a wardrobe situation. He sort of picked it up after the defendant started moving. Correct. That is my interpretation of the judge's rule. He never specifically ruled on what was occurring at the scene? Did not. No. In that regard, I would also point out the question was asked of counsel. Wardrobe is correct. It was just strictly a headlong. In fact, it came out, and I think the lower court decision may have come out of here or maybe the 4th District, I don't remember. But, yeah, it was just a headlong flight case. There was no preexisting report of a crime. That's right. All right, and Wardrobe, according to defense counsel, they held that was sufficient for a Terry stop. Correct. And here you're saying it's sufficient for an arrest? I'm saying it's sufficient for an arrest under the circumstances where the defendant has put on notice that he's been ordered to stop. And I make that argument because that is how the cases have characterized resisting a peace officer in terms of disobeying a directive by the police. Well, if Wardrobe is, Wardrobe, whatever it is, is headlong flight upon seeing the police, I don't, why isn't that, did he know, did Wardrobe, they know they're running from the police. The defendant knows he's running from the police. What's the difference? I'm not seeing the difference. Well, running from the police, you have not disobeyed anything at that point. All you've done is create a suspicion that something's up. You know, it's a natural human impulse that you see someone, you're a police officer, a guy looks at you and takes off running, something's suspicious. Suspicion is not part of the cause, of course. But if you're the officer and you say, hey, stop, and the guy looks at you and says, hell no, I'm going to keep running, then you've actually disobeyed a directive from the police officer that is an authorized act, and that constitutes obstruction of the resisting peace officer. Well, then do we have to, we have to find that Washington is truthful when he says I ordered him to stop. And we have to find the defendant was not truthful when he said he didn't tell me to stop. I think that that's the point that I, yeah, in my brief I said without, the court did not make a specific finding whether it had courted believability to that aspect of the testimony with regards to whether or not the officer had told him to stop. And what I said before is that the defendant's testimony is that he sees the officer running after him and he runs away from him. I mean, he knows these, they're officers physically telling him to stop. If the officer's waiting to run at someone, I think that's probably a fair message that he wants you to stop. Hopefully not a message that's going to shoot you if he doesn't. If he don't, that would be out of it. Any questions? Well, and thanks for coming all the way from Mount Vernon. It's probably warmer down there. Thank you. Thank you. Thank you. Thank you.